108 P.3d 990

Betty FISK, Plaintiff–Respondent,

v.

ROYAL CARIBBEAN CRUISES, LTD.,
a Liberian corporation, Defendant–
Appellant.

No. 30041.

Supreme Court of Idaho,
Boise, December 2004 Term.

March 4, 2005.

Blackburn & Jones, LLP, Boise, and Kaye Rose & Maltzman, LLP, San Diego, CA for appellant. William J. Tucker argued.

Foley, Freeman, Borton & Stern, Chtd., Meridian, for respondent. Joseph W. Borton argued.

BURDICK, Justice.

Royal Caribbean Cruises, Ltd., (Royal Caribbean) appeals the district court's denial of its I.R.C.P. 12(b) motion to dismiss an action brought against it by Betty Fisk for having been filed in an improper forum. Under principles of federal maritime law, Royal Caribbean seeks enforcement of a forum selection clause in the cruise ticket contract signed by Fisk. We reverse the district court and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Fisk was a ticketed passenger aboard the Royal Caribbean liner Viking Serenade for a four-night Baja Mexican cruise in the January of 2002. Through her travel agent, Fisk had been mailed a copy of the passenger contract associated with her cruise ticket, which she signed and presented upon boarding the Viking Serenade. The contract contained forum selection language purporting to limit the forums in which the cruise line could be subject to suit. Specifically, section eleven (11) of the contract provided that:

IT IS AGREED BY AND BETWEEN PASSENGER AND CARRIER THAT ALL DISPUTES AND MATTERS WHATSOEVER ARISING UNDER, IN CONNECTION WITH OR INCIDENT TO THIS CONTRACT SHALL BE LITIGATED, IF AT ALL, IN AND BEFORE A COURT LOCATED IN MIAMI, FLORIDA, U.S.A., TO THE EXCLUSION OF THE COURTS OF ANY OTHER STATE, TERRITORY OR COUNTRY. PASSENGER HEREBY WAIVES ANY VENUE OR OTHER OBJECTION THAT HE MAY HAVE TO ANY SUCH ACTION OR PROCEEDING BEING BROUGHT IN ANY COURT LOCATED IN MIAMI, FLORIDA.

While the Viking Serenade was cruising in international waters, Fisk fell and was injured stepping out of a ship elevator. Alleging negligence on the part of the cruise line, Fisk subsequently filed suit against Royal Caribbean in Ada County District Court.

Citing the forum selection clause in the ticket contract limiting such actions to the courts of Miami, Florida, Royal Caribbean moved to dismiss the suit as having been brought in an inappropriate forum. Royal Caribbean's motion was denied by the district court. We granted Royal Caribbean's timely motion for permissive appeal pursuant to I.A.R. 12(c).

## II. STANDARD OF REVIEW

■■■ A contract regarding the transportation of a passenger "on the high seas" is a maritime contract, and "is the appropriate subject of admiralty jurisdiction." *The Moses Taylor*, 4 Wall. 411, 71 U.S. 411, 427, 18 L.Ed. 397, 400–01 (1867). Federal maritime law governs the enforceability of a forum selection clause in such a contract. *Carnival Cruise Lines, Inc., v. Shute*, 499 U.S. 585, 590, 111 S.Ct. 1522, 1526, 113 L.Ed.2d 622, 629 (1991). State courts have concurrent jurisdiction with the federal courts to try cases at admiralty, but in doing so must apply federal maritime law rather than state law. *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 628, 79 S.Ct. 406, 408, 3 L.Ed.2d 550, 553 (1959).

■■■ "This Court freely reviews matters of law. Interpreting contracts, determining a statute's meaning, and applying law to undisputed facts all constitute matters of law. This Court also exercises free review over constitutional issues." *SE/Z Const., L.L.C. v. Idaho State University*, 140 Idaho 8, 12, 89 P.3d 848, 852 (2004) (internal citations omitted).

## III. ANALYSIS

In opposition to enforcement of the forum selection clause in the ticket contract, Fisk argues for the application of Idaho Code

§ 29–110. That statute provides that "[e]very stipulation or condition in a contract, by which any party thereto is restricted from enforcing his rights under the contract by the usual proceedings in the ordinary tribunals, or which limits the time within which he may thus enforce his rights, is void." I.C. § 29–110. Fisk further argues if Idaho law were applied to the present case, and specifically Idaho Code § 29–110, the statute would void the forum selection clause in the ticket contract because the clause purports to remove jurisdiction from the "ordinary tribunals" in which the present suit could otherwise be brought in Idaho.

## A. Federal Preeminence Over Maritime Law

■■■ The applicability of state law, even in state court, is not to be assumed in a maritime case. This suit arises from a tort occurring on the high seas, and involves the interpretation of a maritime contract. As such, both the tort and the contract are subject to federal maritime law.[1] *Shute*, 499 U.S. at 590, 111 S.Ct. at 1526, 113 L.Ed.2d at 629; *Kermarec*, 358 U.S. at 628, 79 S.Ct. at 408, 3 L.Ed.2d at 553. In the present case, this is not a matter of dispute—even Fisk concedes that under these facts federal maritime law applies. Fisk, however, nevertheless argues that here the Court may look to Idaho law as well.

■■■ Federal preeminence in the sphere of maritime law was established in the United States Constitution's provision that federal "judicial power shall extend to all cases ... of admiralty and maritime jurisdiction." U.S. Const. art. III, § 2, cl. 1. State courts may try cases at admiralty, but when doing so are obligated to apply federal maritime law rather than state law. *Kermarec*, 358 U.S. at 628, 79 S.Ct. at 408, 3 L.Ed.2d at 553; *Lurie v. Norwegian Cruise Lines, Ltd.*, 305 F.Supp.2d 352, 356 (S.D.N.Y.2004) (stating that "regardless of the choice of forum or basis of subject matter jurisdiction, disputes relating to maritime contracts and injuries

---

1. We do not express any opinion regarding the applicability of state law to fraud or misrepresentation claims arising from maritime contracts.

sustained aboard ship are governed by federal maritime law.").

## B. The *Bremen* Factors

 Fisk's argument that Idaho law applies in the present case relies on her reading of the United States Supreme Court's decision in *The Bremen v. Zapata Off–Shore.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). In *Bremen,* the dispute arose from a towage contract between Zapata Off–Shore, an American corporation, and Unterweser, a German corporation. 407 U.S. at 2, 92 S.Ct. at 1909, 32 L.Ed.2d at 516. Zapata contracted with Unterweser to tow a drilling rig from Louisiana to Italy. *Id.* After substantial negotiation between the parties, Unterweser undertook to do so using the deep-sea tug Bremen. *Id.* at 3, 92 S.Ct. at 1909, 32 L.Ed.2d at 516. As the Bremen and the drilling rig were passing through the Gulf of Mexico the rig was damaged in a storm, and Zapata instructed Unterweser to tow the rig to Tampa, Florida, the nearest available port. *Id.* While the Bremen was docked in Florida, Zapata brought suit against Unterweser in a Florida federal district court, alleging negligence and breach of contract. *Id.* at 3–4, 92 S.Ct. at 1909–10, 32 L.Ed.2d at 516–17. Unterweser moved to dismiss the action, invoking a forum selection clause in the towage contract which provided that any dispute between the parties must be adjudicated in the "London Court of Justice." *Id.* at 4, 92 S.Ct. at 1910, 32 L.Ed.2d at 517. Unterweser's motions to dismiss or stay Zapata's suit in the United States were denied first in federal district court and later by the Fifth Circuit Court of Appeals. *Id.* at 6–8, 92 S.Ct. at 1911–12, 32 L.Ed.2d at 518–19.

On review, the United States Supreme Court in *Bremen* chose to enforce the forum selection clause because it was contained in a contract resulting from "an arms's-length negotiation by experienced and sophisticated businessmen," and there was no "compelling and countervailing reason" not to honor its terms. *Id.* at 12, 92 S.Ct. at 1914, 32 L.Ed.2d at 521. This reversal of the traditional reluctance to enforce such clauses resulted from the Court's reasoning that "[t]he expansion of American business and industry

will hardly be encouraged if, notwithstanding solemn contracts, we insist on a parochial concept that all disputes must be resolved by our laws and in our courts." *Id.* at 9, 92 S.Ct. at 1912, 32 L.Ed.2d at 519. The towed drilling rig, continued the Court, could have been damaged at any point along its long route between Louisiana and Italy, exposing the parties to liability in a host of different jurisdictions. *Id.* at 13, 92 S.Ct. at 1914–15, 32 L.Ed.2d at 522. Allowing the parties to agree to an appropriate forum in advance reduces uncertainties and "is an indispensable element in international trade, commerce, and contracting." *Id.* at 13–14, 92 S.Ct. at 1914–15, 32 L.Ed.2d at 522–23. In substance then, *Bremen* established a rule that under federal law a forum selection clause will be enforced provided (1) it is "freely negotiated," and (2) it is "unaffected by fraud, undue influence, or overweening bargaining power." *Id.* at 12–13, 92 S.Ct. at 1914–15, 32 L.Ed.2d at 521–22.

In addition to the two factors noted above, Fisk argues the Court in *Bremen* articulated a third factor barring enforcement of forum selection clauses if doing so would contravene a strong public policy in the forum in which the suit is brought. Idaho has articulated such a strong public policy against the enforcement of forum selection clauses by enacting I.C. § 29–110, and has buttressed that statute by case law such as *Cerami–Kote v. Energywave Corp.,* 116 Idaho 56, 773 P.2d 1143 (1989). Therefore, the argument concludes, *Bremen* carved out an exception allowing this Court to apply Idaho Code § 29–110 and declare the forum selection clause at issue to be void.

 Fisk's interpretation of *Bremen* is incorrect as it relies on a single sentence pulled out of context and runs counter to the principles that led Congress and the framers of the constitution to mandate a nationally uniform admiralty law. Federal preeminence over maritime law was established in the constitution in order to establish

> a system of law coextensive with, and operating uniformly in, the whole country. It certainly could not have been the intention to place the rules and limits of maritime law under the disposal and regulation of

the several states, as that would have defeated the uniformity and consistency at which the Constitution aimed[.]

*The Lottawanna,* 21 Wall. 558, 88 U.S. 558, 575, 22 L.Ed. 654, 662 (1874). There remains the possibility that "state law may supplement maritime law when maritime law is silent or where a local matter is at issue, but state law may not be applied where it would conflict with maritime law." *Floyd v. Lykes Bros. S.S. Co., Inc.,* 844 F.2d 1044, 1047 (3rd Cir.1988). The test for determining when there is a conflict inquires as to whether the state law "contravenes the essential purpose expressed by an act of Congress, or works material prejudice to the characteristic features of the general maritime law, or interferes with the proper harmony and uniformity of that law in its international and interstate relations." *Southern Pacific Co., v. Jensen,* 244 U.S. 205, 216, 37 S.Ct. 524, 529, 61 L.Ed. 1086, 1098 (1917) (superceded on other grounds by statute). The enforceability of forum selection clauses in cruise ticket contracts is in the realm of maritime law. *Shute,* 499 U.S. at 590, 111 S.Ct. at 1526, 113 L.Ed.2d at 629. Additionally, there are a number of policy rationales—such as allowing a cruise line to avoid the threat of litigation in many different fora in the event of a mishap—that would be undercut if an individual state were permitted to exempt its own residents from an otherwise uniform national system. *See id.* at 593–94, 111 S.Ct. at 1527, 113 L.Ed.2d at 631–32. Consequently, following Fisk's interpretation of *Bremen* would run counter to the traditional principles of federal maritime law.

Then there is the matter of context. In *Bremen,* the sentence at issue appeared in context as follows:

We note, however, that there is nothing in the record presently before us that would support a refusal to enforce the forum clause. The Court of Appeals suggested that enforcement would be contrary to the public policy of the forum under *Bisso v. Inland Waterways Corp.,* 349 U.S. 85, 75 S.Ct. 629, 99 L.Ed. 911 (1955), because of the prospect that the English courts would enforce the clauses of the

towage contract purporting to exculpate Unterweser [the German firm seeking to have the forum selection clause enforced] from liability for damages to the [drilling rig]. A contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision. See, *e.g., Boyd v. Grand Trunk W.R. Co.,* 338 U.S. 263, 70 S.Ct. 26, 94 L.Ed. 55 (1949). It is clear, however, that whatever the proper scope of the policy expressed in *Bisso,* it does not reach this case.

*Id.*

The sentence upon which Fisk relies states that "[a] contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *Id.* This was the position of the Court of Appeals, flowing from its expansive interpretation of *Bisso v. Inland Waterways Corp.,* 349 U.S. 85, 75 S.Ct. 629, 99 L.Ed. 911 (1955). *See Bremen,* 407 U.S. at 15, 92 S.Ct. at 1916, 32 L.Ed.2d at 523. Having stated the position of the Court of Appeals, the United States Supreme Court went on to reject it, at least in reference to international commercial agreements dealing with events outside of American waters. *See id.* at 15–16, 92 S.Ct. at 1916, 32 L.Ed.2d at 523. The Court stated "[i]t is clear, however, that whatever the proper scope of the policy expressed in *Bisso, it does not reach this case. Bisso* rested on considerations with respect to the towage business strictly in American waters, and those considerations are not controlling in an international commercial agreement." *Id.* (emphasis added). The Court in *Bremen* thereby limited the scope of the *Bisso* public policy exception relied upon by the Court of Appeals, clarifying that the exception is "not controlling in an international commercial agreement" outside of American waters. *Id.* Here, the maritime contract at issue was international in nature as it involved a cruise to Mexico. We find therefore that *Bremen* provides no authority permitting this Court to apply Idaho law in place of federal maritime law.

## C. The Application of *Carnival Cruise Lines, Inc. v. Shute*

■ The holding in *Bremen* that forum selection clauses are presumptively enforceable under federal maritime law was extended in *Carnival Cruise Lines, Inc., v. Shute,* 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991). In *Shute,* the plaintiff was a passenger aboard one of the defendant's cruise liners. *Id.* at 588, 111 S.Ct. at 1524, 113 L.Ed.2d at 628. While the vessel was off the coast of Mexico, the plaintiff was injured during a guided tour of the ship's galley. *Id.* Asserting negligence on the part of the defendant, she brought a tort action against the cruise line in a federal district court in the State of Washington. *Id.* The defendant moved for summary judgment, contending, among other arguments, that a forum selection clause in the ticket contract required any action to be brought in a court in the State of Florida. *Id.* The district court granted the summary judgment motion, but was reversed by the Ninth Circuit Court of Appeals. *Id.* On review, the United States Supreme Court recognized that unlike the contract at issue in *Bremen,* the ticket contract in *Shute* was a form contract rather than the product of bargaining. *Id.* at 593, 111 S.Ct. at 1527, 113 L.Ed.2d at 631. Additionally, the Court recognized the lack of bargaining parity between the parties. *Id.* Nevertheless, the *Shute* Court enforced the forum selection clause in the ticket contract, removing the requirement found under *Bremen* that such clauses were valid only when they formed part of a freely negotiated contract. *Id.* The remaining requirement to be met by forum selection clauses was that they be able to pass "judicial scrutiny for fundamental fairness." *Id.* at 595, 111 S.Ct. at 1528, 113 L.Ed.2d at 633.

■ The facts in *Shute* were nearly identical to those of the present case. Both cases involve maritime torts occurring on a cruise ship off the coast of Mexico. Both cases center on the enforceability of a forum selection clause in a non-negotiated cruise ticket form contract establishing Florida as the sole appropriate forum for litigation. Neither in *Shute* nor here has the plaintiff raised fairness issues such as inconvenience, fraud, or overreaching. *Shute,* 499 U.S. at 594–95, 111 S.Ct. at 1527–28, 113 L.Ed.2d at 632–33 (stating there was "no finding regarding the physical and financial impediments to the Shutes' pursuing their case in Florida ... [and][s]imilarly, there is no evidence that [the cruise line] obtained [Shute's] accession to the forum clause by fraud or overreaching."). Given the nearly identical facts in *Shute,* federal preemption of the field of maritime law requires us to apply the holding in that case to the matter presently before the Court. Therefore, we hold that the forum selection clause in the cruise ticket contract at issue must be enforced.

## D. Attorney Fees On Appeal

■ Fisk has requested an award of attorney fees on appeal pursuant to Idaho Code § 12–121. A prevailing party will be awarded attorney fees on appeal under Idaho Code § 12–121 "when this Court has the abiding belief that the appeal was brought or defended frivolously, unreasonably or without foundation." *Loveless v. Sword,* 140 Idaho 105, 109, 90 P.3d 330, 334 (2004). Fisk was not the prevailing party on appeal, and therefore no award of attorney fees to Fisk is warranted.

## IV. CONCLUSION

Idaho Code § 29–110 and Idaho's public policy against the enforcement of forum selection clauses remains unchanged by our holding in this case. Our decision results from the facts of this case, requiring the application of federal maritime law in place of state law.

We reverse the district court's denial of Royal Caribbean's I.R.C.P. 12(b) motion to dismiss, and remand to the district court for further proceedings. Costs on appeal to Royal Caribbean.

Chief Justice SCHROEDER and Justices TROUT, EISMANN and KIDWELL, pro tem concur.